UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

DWAYNE WILSON,

      Petitioner,

v.                                              CASE NO. 6:10-cv-422-Orl-36KRS

SECRETARY, DEPARTMENT OF
CORRECTIONS, et al.,

      Respondents.

_____

## ORDER

Petitioner initiated this action for habeas corpus relief pursuant to 28 U.S.C. § 2254. Upon consideration of the second amended petition (Doc. No. 16), the Court ordered Respondents to show cause why the relief sought should not be granted. Thereafter, Respondents filed a response to the second amended petition for writ of habeas corpus in compliance with this Court's instructions and with the *Rules Governing Section 2254 Cases in the United States District Courts* (Doc. No. 19). Petitioner filed a reply to the response (Doc. No. 23).

Petitioner alleges ten claims for relief. For the following reasons, the second amended petition is denied.

## I.   *Procedural History*

Petitioner was charged by information with second degree murder with a firearm. A jury found Petitioner guilty as charged. The trial court sentenced Petitioner to a thirty-year term of imprisonment.

Petitioner appealed.  The Fifth District Court of Appeal of Florida affirmed *per curiam*.

Petitioner filed a motion for post-conviction relief pursuant to Florida Rule of Criminal Procedure 3.850 and five amended Rule 3.850 motions.  The state court denied the claims raised in the motions.  Petitioner appealed.  The Fifth District Court of Appeal of Florida affirmed *per curiam*.

## II.    Legal Standards

### A.    Standard of Review Under the Antiterrorism Effective Death Penalty Act ("AEDPA")

Pursuant to the AEDPA, federal habeas relief may not be granted with respect to a claim adjudicated on the merits in state court unless the adjudication of the claim:

(1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  The phrase "clearly established Federal law," encompasses only the holdings of the United States Supreme Court "as of the time of the relevant state-court decision."  *Williams v. Taylor*, 529 U.S. 362, 412 (2000).

"[S]ection 2254(d)(1) provides two separate bases for reviewing state court decisions; the 'contrary to' and 'unreasonable application' clauses articulate independent considerations a federal court must consider."  *Maharaj v. Sec'y for Dep't of Corr.*, 432 F.3d 1292, 1308 (11th Cir. 2005).  The meaning of the clauses was discussed by the Eleventh

Circuit Court of Appeals in *Parker v. Head*, 244 F.3d 831, 835 (11th Cir. 2001):

> Under the "contrary to" clause, a federal court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the United States Supreme Court] on a question of law or if the state court decides a case differently than [the United States Supreme Court] has on a set of materially indistinguishable facts.  Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the United States Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case.

Even if the federal court concludes that the state court applied federal law incorrectly, habeas relief is appropriate only if that application was "objectively unreasonable."  *Id.*

Finally, under § 2254(d)(2), a federal court may grant a writ of habeas corpus if the state court's decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  A determination of a factual issue made by a state court, however, shall be presumed correct, and the habeas petitioner shall have the burden of rebutting the presumption of correctness by clear and convincing evidence. *See Parker*, 244 F.3d at 835-36; 28 U.S.C. § 2254(e)(1).

### B.      Standard for Ineffective Assistance of Counsel

The Supreme Court of the United States in *Strickland v. Washington*, 466 U.S. 668 (1984), established a two-part test for determining whether a convicted person is entitled to relief on the ground that his counsel rendered ineffective assistance: (1) whether counsel's performance was deficient and "fell below an objective standard of reasonableness"; and (2) whether the deficient performance prejudiced the defense.[1]  *Id.* at

---

[1]In *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993), the Supreme Court of the United States clarified that the prejudice prong of the test does not focus solely on mere outcome

687-88. A court must adhere to a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Id.* at 689-90. "Thus, a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id.* at 690; *Gates v. Zant*, 863 F.2d 1492, 1497 (11th Cir. 1989).

As observed by the Eleventh Circuit Court of Appeals, the test for ineffective assistance of counsel:

> has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial. Courts also should at the start presume effectiveness and should always avoid second guessing with the benefit of hindsight. *Strickland* encourages reviewing courts to allow lawyers broad discretion to represent their clients by pursuing their own strategy. We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial, in fact, worked adequately.

*White v. Singletary*, 972 F.2d 1218, 1220-21 (11th Cir. 1992) (citation omitted). Under those rules and presumptions, "the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994).

### III.    *Analysis*

#### A.    *Claim One*

Petitioner asserts that the trial court violated his Fifth and Fourteenth Amendment

---

determination; rather, to establish prejudice, a criminal defendant must show that counsel's deficient representation rendered the result of the trial fundamentally unfair or unreliable.

rights by allowing evidence to be presented about a .380 firearm and shell casings and by failing to issue a cautionary instruction in relation to the evidence.  In support of his claim, Petitioner argues that the trial court ruled that testimony about the .380 firearm and shell casings was not admissible and the trial court's failure to grant the defense's motion in limine prior to trial was prejudicial because the jury saw the weapon and heard testimony that the weapon was used in the offense.  (Doc. No. 16-1 at 12-14.)  Respondents maintain that this claim is procedurally barred from review because it was not raised as a federal claim in the state court.

Petitioner raised the instant claim on direct appeal.  (App. R.)  Petitioner, however, did not assert that the trial court's evidentiary ruling resulted in a constitutional violation. *Id.*

One procedural requirement set forth in the AEDPA precludes federal courts, absent exceptional circumstances, from granting habeas relief unless the petitioner has exhausted all means of available relief under state law.  28 U.S.C. § 2254(b); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842-43 (1999); *Picard v. Connor*, 404 U.S. 270, 275 (1971).  Specifically, the AEDPA provides, in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that–
>
> (A) the applicant has exhausted the remedies available in the courts of the State; or
>
> (B) (i) there is an absence of available State corrective process; or

> (ii)    circumstances exist that render such process ineffective
>         to protect the rights of the applicant.

28 U.S.C. § 2254(b)(1).

Thus, a federal court must dismiss those claims or portions of claims that have been denied on adequate and independent procedural grounds under state law. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991), *holding modified by Martinez v. Ryan*, 132 S. Ct. 1309 (2012). In addition, a federal habeas court is precluded from considering claims that are not exhausted but would clearly be barred if returned to state court. *Id.* at 735 n.1 (stating that if the petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred, there is a procedural default for federal habeas purposes regardless of the decision of the last state court to which the petitioner actually presented his claims).

In order to satisfy the exhaustion requirement, a state petitioner must "fairly presen[t] federal claims to the state courts in order to give the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Duncan v. Henry*, 513 U.S. 364, 365 (1995) (citing *Picard*, 404 U.S. at 275-76) (internal quotation marks omitted). The Supreme Court of the United States has observed that "Congress surely meant that exhaustion be serious and meaningful." *Keeney v. Tamayo-Reyes*, 504 U.S. 1, 10 (1992). Furthermore, the Court explained:

> [c]omity concerns dictate that the requirement of exhaustion is not satisfied
> by the mere statement of a federal claim in state court.  Just as the State must
> afford the petitioner a full and fair hearing on his federal claim, so must the

6

> petitioner afford the State a full and fair opportunity to address and resolve
> the claims on the merits.

*Id.*; *see also Henderson v. Campbell*, 353 F.3d 880, 898 n.25 (11th Cir. 2003) ("Both the legal theory and the facts on which the federal claim rests must be substantially the same for it to be the substantial equivalent of the properly exhausted claim.").

Procedural default will be excused only in two narrow circumstances. First, a petitioner may obtain federal review of a procedurally defaulted claim if he can show both "cause" for the default and actual "prejudice" resulting from the default. "To establish 'cause' for procedural default, a petitioner must demonstrate that some objective factor external to the defense impeded the effort to raise the claim properly in the state court." *Wright v. Hopper*, 169 F.3d 695, 703 (11th Cir. 1999). To establish "prejudice," a petitioner must show that there is at least a reasonable probability that the result of the proceeding would have been different. *Henderson*, 353 F.3d at 892 (citations omitted).

The second exception, known as the "fundamental miscarriage of justice," only occurs in an extraordinary case, in which a "constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray v. Carrier*, 477 U.S. 478, 496 (1986). Actual innocence means factual innocence, not legal insufficiency. *Bousley v. United States*, 523 U.S. 614, 623 (1998). To meet this standard, a petitioner must "show that it is more likely than not that no reasonable juror would have convicted him" of the underlying offense. *Schlup v. Delo*, 513 U.S. 298, 327 (1995). In addition, "'[t]o be credible,' a claim of actual innocence must be based on [new] reliable evidence not presented at trial." *Calderon v. Thompson*, 523 U.S. 538, 559 (1998) (quoting *Schlup*, 513 U.S. at 324).

The record demonstrates that Petitioner failed to assert in the state court that the trial court's evidentiary ruling resulted in a constitutional violation.  Claim one, therefore, was not exhausted in the state courts.  Absent an exception to the procedural default bar, claim one is barred from review by this Court.

Petitioner has not shown either cause or prejudice to overcome the procedural default.  Furthermore, Petitioner has not demonstrated that he is actually innocent.  Accordingly, claim one is procedurally barred from review.

Alternatively, Petitioner has not established that the state court's evidentiary ruling violated his constitutional rights.  In considering a claim based on a state court evidentiary ruling, the Eleventh Circuit has explained:

> We review state court evidentiary rulings on a petition for habeas corpus to determine only whether the error, if any, was of such magnitude as to deny petitioner his right to a fair trial.  Erroneously admitted evidence deprives a defendant of fundamental fairness only if it was a crucial, critical, highly significant factor in the [defendant's] conviction.

*Jacobs v. Singletary*, 952 F.2d 1282, 1296 (11th Cir. 1992) (internal quotation marks and citations omitted).

In the instant case, prior to trial, Petitioner filed a motion in limine to exclude evidence related to a .380 firearm and shell casings.  The trial court denied the motion, reasoning that the State would have to lay the predicate for the admission of the weapon at trial at which time the court would decide if the weapon was admissible.  (App. G.)  At trial, Lee Sing Hall ("Hall") identified Petitioner as the individual she saw shoot her boyfriend Fabian Moore ("Moore") in the head.  The jury further heard Petitioner's

admission to police that he fired a gun, which he thought was a .25, at the time of the offense.  Petitioner told police that he threw his firearm out the window of the vehicle in which he was riding near the intersection of Kirkman Road and State Road 50 when he left the scene of the offense.  Investigators testified that they did not locate a firearm where Petitioner told them he had thrown it out, but they did recover a .380 firearm approximately a half mile from that location on the route taken by Petitioner and his co-defendant on the night of the incident.  Shell casings found at the scene of the offense were determined to have been fired by the .380.

When the prosecutor moved to admit the .380 firearm and shell casings into evidence, the trial court denied the request.  The trial court reasoned that the prosecutor failed to link the weapon to Petitioner, and thus, although the testimony regarding the firearm and shell casings was admissible, the firearm and shell casings themselves were not admissible.  (App. T at 223-24.)

Evidence tending to prove or disprove a material fact is relevant and admissible unless its probative value is substantially outweighed by the danger of unfair prejudice. Fla. Stat. §§ 90.401, 90.402, 90.403 (2004).  "Generally, where the evidence at trial does not link a seized gun to the crime charged, the gun is inadmissible in evidence." *Downs v. State*, 65 So. 3d 594, 596 (Fla. 4th DCA 2011) (citing *O'Connor v. State*, 835 So. 2d 1226, 1230 (Fla. 4th DCA 2003)).

The evidence at trial established that Petitioner admitted shooting a firearm at the scene of the offense and was identified as the person who shot the victim in the head.

Petitioner told police that he thought the firearm he fired was a .25 but said he was not certain because he was not knowledgeable of firearms. Petitioner threw the gun he fired out of the vehicle when he left the scene of the offense, and police recovered a .380 along the route taken by Petitioner, although not in the exact location Petitioner provided. The .380 was identified as the firearm that shot the .380 shell casings found near the victim at the scene of the offense. All of this evidence connected the firearm to the offense and circumstantially to Petitioner. The Court concludes, therefore, that the .380 firearm and shell casings and the testimony about them were relevant admissible evidence. Moreover, even assuming the admission of any of this evidence was erroneous, the Court notes that it was not a crucial, critical, highly significant factor in Petitioner's conviction given Hall's testimony, another witness' description of the shooter's clothing, and Petitioner's description of his clothing on the night of the murder and his admission he shot a firearm. Accordingly, claim one is procedurally barred and otherwise denied pursuant to Section 2254(d).

### B. Claim Two

Petitioner asserts that counsel rendered ineffective assistance by failing to move for a mistrial or seek a curative instruction when the jury saw the .380 firearm and shell casings. Petitioner maintains that had counsel sought a curative instruction, the trial court could have told the jury that the firearm should be disregarded because it was not the murder weapon.

Petitioner raised this claim in his Rule 3.850 motion. The state court denied relief

pursuant to *Strickland*.  (App. H at 2.)  The state court reasoned that a motion for mistrial or a curative instruction would have been denied. *Id.*

Petitioner has not shown that the denial of this claim is contrary to, or an unreasonable application of, *Strickland*.  As discussed *supra*, the firearm and shell casings were admissible in light of the evidence linking the firearm to the offense.  Moreover, there is no evidence that the jury saw the firearm.  Instead, the prosecutor said that the jury may have seen the gun when he took it out of the evidence box, but neither he nor the trial judge knew if anyone had seen it.  (App. T at 230-31.)  Finally, even assuming the jury saw the firearm and it was not admissible, the trial court ruled that testimony regarding the firearm was admissible, an eyewitness identified Petitioner as the shooter, and Petitioner admitted shooting a firearm.  Thus, Petitioner has not demonstrated that a reasonable probability exists that a mistrial would have been granted, a curative instruction would have been given, or that the outcome of the trial would have been different had counsel moved for a mistrial or a curative instruction.  Accordingly, claim two is denied.

### C. *Claim Three*

Petitioner contends that counsel rendered ineffective assistance by failing to object to the prosecutor's argument that Petitioner possessed the .380 firearm.  Petitioner maintains that the prosecutor's argument was improper because the trial court had ruled that there was no connection between Petitioner and the firearm.

Petitioner raised this claim in his Rule 3.850 motion.  The state court denied relief pursuant to *Strickland*.  (App. H at 7.)  The state court reasoned that the prosecutor was

permitted to argue reasonable inferences from the evidence presented, and thus, counsel had no basis to object to the prosecutor's argument. *Id*.

"[A]n attorney is allowed to argue reasonable inferences from the evidence and to argue credibility of witnesses or any other relevant issue so long as the argument is based on the evidence." *Miller v. State*, 926 So. 2d 1243, 1254-55 (Fla. 2006) (citing *Craig v. State*, 510 So. 2d 857, 865 (Fla. 1987)). As discussed *supra*, the evidence included eyewitness testimony that Petitioner shot the victim in the head, Petitioner's admission to police that he shot a handgun and threw it out of his vehicle when he left the scene, and testimony that the .380 firearm, which was found on the route taken by Petitioner approximately a half mile from where he said he disposed of his firearm, fired the shell casings found at the scene of the offense. Moreover, the trial court ruled that testimony concerning the firearm was admissible and the parties could make arguments from such evidence. Petitioner, therefore, has not demonstrated either deficient performance or prejudice resulting from counsel's failure to object to the prosecutor's closing argument. Accordingly, claim three is denied pursuant to Section 2254(d).

>    D.    *Claim Four*

Petitioner asserts that counsel rendered ineffective assistance by failing to impeach Hall with prior inconsistent statements. In support of this claim, Petitioner argues that counsel should have impeached Hall with her prior statement to police wherein she (1) said she heard three shots, (2) failed to state she saw the perpetrator shoot the victim in the back of the head, (3) said she saw Petitioner's co-defendant drive by after she exited her vehicle,

(4) said the perpetrators drove towards Pine Hills after the shooting, and (5) stated that she did not see who was in the vehicle.

Petitioner raised this claim in his Rule 3.850 motion. The state court denied relief pursuant to *Strickland*. (App. H at 7-8.) The state court concluded that although there were some inconsistencies in Hall's statement and testimony, there were no critical inconsistencies that could have been used to impeach her testimony at trial. *Id.* at 8. The state court noted that it is not unusual for a witness to remember additional facts subsequent to making an initial statement or to forget facts provided in the initial statement. *Id.* The court further reasoned that counsel cross-examined Hall about inconsistencies in her statement and testimony. *Id.*

The state court's denial of this claim is supported by the record. Hall told the police she heard a shot, turned, and saw the victim running while a man in a blue shirt chased him and shot at him. (Doc. No. 23 at 41, 49-50.) At trial, Hall consistently testified she heard a shot at which time she turned, observed the victim running, and saw Petitioner chase and shoot the victim. (App. T at 47-55.) Although Hall did not initially state that she saw Petitioner shoot the victim in the back of the head, consistent with her trial testimony, she said that she observed the shooter chase the victim after which the victim fell to the ground and was shot in the head. (Doc. No. 23 at 41.) Hall indicated in her statement that the perpetrators left together, driving toward Pine Hills. *Id.* Similarly, Hall testified that she saw the vehicle she knew was owned by one of the perpetrators drive away from the scene, but she did not know who was in the vehicle. *Id.* Hall's initial statement and her

13

trial testimony were not completely consistent, and counsel could have cross-examined her about the inconsistencies.  The inconsistencies, however, were not substantial.

Furthermore, counsel thoroughly cross-examined Hall and brought out inconsistencies in her testimony.  Petitioner has not demonstrated that counsel was deficient for failing to impeach Hall on minor inconsistencies that did not completely contradict her trial testimony and could easily be attributed to the lapse of time or differences in the manner she was questioned and recounted the events.  Even assuming counsel was deficient for failing to impeach Hall with the minor inconsistencies, Petitioner has not demonstrated that prejudice resulted therefrom.  Substantial evidence was presented from which the jury could conclude that Petitioner committed the offenses, and Hall's pre-trial statements and trial testimony were not so dissimilar as to discredit her account of the offense.  Accordingly, claim four is denied pursuant to Section 2254(d).

E.      *Claim Five*

Petitioner asserts that counsel rendered ineffective assistance by failing to present evidence that Hall had been convicted of a crime and had pending charges.  In support of this claim, Petitioner contends that such evidence would have shown Hall's lack of credibility.

Petitioner raised this claim in his Rule 3.850 motion.  In denying relief, the state court noted that Hall's pending charge of petit theft could not have been used to impeach her testimony, but to show possible bias or motive for implicating Petitioner.  (App. H at 11-12.)  The state court reasoned that Petitioner had not established prejudice because the jury

knew that Hall was biased based on her relationship with the victim and that inconsistencies existed in Hall's testimony. *Id.*   The court further noted that Hall's testimony was not the only evidence against Petitioner. *Id.*

Petitioner has not demonstrated that the state court's denial of this claim is contrary to, or an unreasonable application of, *Strickland.* Although counsel could have questioned Hall about any pending charges to show her bias or motive, the jury heard testimony calling Hall's credibility into question.[2] Moreover, had counsel questioned Hall about her pending charges, the State could have demonstrated that Hall provided substantially identical statements to police prior to trial. The evidence against Petitioner also consisted of his statements to police. Finally, there is no indication that the State offered Hall anything in return for her testimony even assuming that Hall had pending charges, and any suggestion otherwise is speculation. Accordingly, Petitioner has not demonstrated a reasonable probability exists that he would not have been found guilty had counsel questioned Hall about her purported pending charges, and claim five is denied pursuant to Section 2254(d).

F.   **Claim Six**

Petitioner maintains that counsel rendered ineffective assistance by failing to question Omar Lawrence ("Lawrence") about whether Hall knew Petitioner at the time of the offense. Petitioner asserts that he told counsel that Lawrence knew that Hall had

---

[2]The Court notes that from review of the documents submitted by Petitioner, it is not clear that Hall had pending charges at the time of trial. *See* Doc. No. 23 at 80-84.

spoken to Petitioner on the telephone prior to the offense.  Petitioner argues that this testimony would have impeached Hall's testimony that she did not know Petitioner prior to the offense and shown that Petitioner did not shoot the victim.

Petitioner raised this claim in his Rule 3.850 motion.  The state court denied relief pursuant to *Strickland.*  (App. H at 13.)  The state court noted that Petitioner told police that he did not know Lawrence, which made Petitioner's contention that Lawrence was aware that Hall knew Petitioner questionable.  *Id.*  The state court reasoned that  inconsistencies in Hall's testimony were established at trial, and thus, no prejudice was demonstrated by counsel's failure to question Lawrence on the issue.  *Id.*

Petitioner has not demonstrated that the state court's denial of this claim is an unreasonable application of *Strickland.*  Petitioner denied knowing Lawrence when interviewed by police.  (App. G.)  Additionally, Petitioner did not tell the trial court that counsel failed to question Lawrence regarding whether Hall knew him when the trial court asked Petitioner if he was satisfied with counsel's performance.  (App. T at 293.)  Instead, Petitioner indicated that he was satisfied with counsel's representation.  *Id.*  Consequently, Petitioner's contention that counsel failed to question Lawrence as requested is dubious.

Moreover, simply because Hall may have spoken to Petitioner on the telephone prior to the offenses does not mean that she would have seen Petitioner prior to the offenses, and thus, been able to identify him by name and sight.  Additionally, even assuming that counsel had questioned Lawrence concerning whether Petitioner and Hall had spoken on the telephone and Lawrence had affirmed this, Petitioner has not shown

16

that a reasonable probability exists that the outcome of the trial would have been different given the evidence presented and the fact that Hall's testimony was challenged. Accordingly, claim six is denied pursuant to Section 2254(d).

G.     Claim Seven

Petitioner asserts that counsel rendered ineffective assistance by failing to call an expert witness to discredit the State's theory of which perpetrator fired which shots and how the offense was committed. Petitioner maintains that an expert would have been able to refute the State's theory that the perpetrator who chased the victim was the one who killed the victim.

Petitioner raised this claim in his Rule 3.850 motion. The state court denied relief pursuant to *Strickland*. (App. H at 10-11.)

"[E]vidence about the testimony of a putative witness must generally be presented in the form of actual testimony by the witness or on affidavit. A defendant cannot simply state that the testimony would have been favorable; self-serving speculation will not sustain an ineffective assistance claim." *United States v. Ashimi*, 932 F.2d 643, 650 (7th Cir. 1991) (footnotes omitted)). Therefore, to prevail on a claim that trial counsel should have called a witness, a petitioner must first make a sufficient factual showing substantiating the proposed witness testimony. *United States v. Schaflander*, 743 F.2d 714, 721 (9th Cir. 1984). Evidence sufficient to satisfy this requirement includes sworn affidavits from the potential witnesses stating what testimony they would have provided. *Id.* Absent this necessary factual showing, a petitioner's mere conclusory allegations are insufficient to warrant a

finding that trial counsel was ineffective for failing to call witnesses to testify.  *Id.*

In the instant case, Petitioner has failed to present evidence of actual testimony or any affidavit from an expert.  Thus, Petitioner has not made the requisite factual showing to support this claim.  Petitioner's self-serving speculation will not sustain a claim of ineffective assistance of counsel.

Furthermore, Petitioner has not demonstrated that a reasonable probability exists that he would not have been found guilty had an expert been called.  Witnesses testified that the victim was shot by two individuals, one of whom chased the victim and subsequently shot him in the head while he was on the ground.  The jury was charged on the principal theory.  Thus, even assuming an expert could have refuted the order of the shots or the manner in which the shots were inflicted, Petitioner would have been guilty as a principal in the absence of evidence that he did not shoot a firearm at the victim.  As discussed previously, testimony was presented that Petitioner did shoot a firearm at the victim. Thus, claim seven is speculative and otherwise subject to denial pursuant to Section 2254(d).

### H.    *Claim Eight*

Petitioner contends that counsel rendered ineffective assistance by advising him not to testify and by threatening to withdraw from the case if Petitioner testified.  Petitioner argues he would have testified that he shot a .25 caliber revolver on the night of the incident.

Petitioner raised this claim in his Rule 3.850 motion.  The state court denied releif

pursuant to *Strickland*.  (App. H at 3-4.)  The state court reasoned that Petitioner never advised the trial court that counsel threatened or coerced him not to testify.  *Id*.  The state court further concluded that Petitioner failed to demonstrate prejudice resulted from counsel's puported threats or advice not to testify in light of the evidence presented.  *Id.*

The record reflects that the trial court advised Petitioner of his right to testify and Petitioner indicated that he did not want to do so.  (App. T at 255-56.)  At no time did Petitioner tell the court that counsel had threatened to withdraw from the case if he testified or that he wanted to testify.  Furthermore, the jury heard Petitioner's statements to police wherein he told them that he thought he had shot a .25 caliber firearm. Consequently, Petitioner has not shown that counsel was deficient or that prejudice resulted from counsel's purported threats or advice not to testify.  Accordingly, claim eight is denied pursuant to Section 2254(d).

### I.    *Claim Nine*

Petitioner maintains that counsel rendered ineffective assistance by failing to object to the jury instructions.  In support of the claim, Petitioner asserts that the standard jury instruction for manslaughter erroneously contained an element requiring the State to prove intent to kill, which precluded the jury from finding him guilty of the lesser offense of manslaughter.  (Doc. No. 16-1 at 36-38.)

Petitioner concedes that he did not raise this argument in his Rule 3.850 motion because it is based on *Montgomery v. State*, 39 So. 3d 252 (Fla. 2010) (holding that standard jury instruction on manslaughter requiring the jury to find that the defendant intended to

kill the victim was erroneous and resulted in fundamental error), which was issued after his state collateral proceeding had concluded.  *Id*.  Despite this concession, however, Respondents failed to assert that claim nine is procedurally barred from review because it was not exhausted in the state court.  Instead, Respondents maintain that the claim is subject to denial pursuant to Section 2254(d) because it was denied by the state court. Apparently, Respondents make this argument because Petitioner raised an ineffective assistance of counsel claim concerning the jury instructions in his Rule 3.850.  Respondents, however, seemingly did not actually read Petitioner's entire allegations in the instant petition because had they done so, it would have been clear that Petitioner has changed his theory of why the jury instructions were erroneous.  The Court will address this claim *de novo* on the merits in the absence of any contention by Respondents that claim nine is unexhausted and thus procedurally barred.

Petitioner has not demonstrated that counsel rendered ineffective assistance by failing to anticipate the Supreme Court of Florida's determination that the standard jury instruction on manslaughter was erroneous.  *Montgomery* was issued approximately six years after Petitioner's trial.  Counsel is not required to anticipate changes in the law. *See United States v. Ardley*, 273 F.3d 991, 993 (11th Cir. 2001);*see also Ross v. State*, 82 So. 3d 975, 976 (Fla. 4th DCA 2011) (holding that *Montgomery* "does not apply retroactively to convictions which were final before our supreme court issued that decision."). Furthermore, even assuming counsel should have objected to the manslaughter instruction, Petitioner has not shown that prejudice resulted from counsel's failure to do so.  The

evidence was sufficient for the jury to find Petitioner guilty of second degree murder, and Petitioner has not demonstrated a reasonable probability exists that he would not have been found guilty of second degree murder absent the erroneous manslaughter instruction. Accordingly, claim nine is denied.

### J.   Claim Ten

Petitioner asserts that counsel rendered ineffective assistance by failing to move for a judgment of acquittal.  In support of this claim, Petitioner argues that testimony was presented that he was not the shooter, the evidence did not establish that the victim was shot in the back of the head at close range, and no evidence linked the .380 firearm to Petitioner or established that any bullet from the weapon hit the victim.  (Doc. No. 16-1 at 39-40.)

Petitioner raised this claim in his Rule 3.850 motion.  The state court denied relief pursuant to *Strickland*.  (App. H at 4-5.)  The state court reasoned that the evidence presented was sufficient to overcome a motion for judgment of acquittal.  *Id*.

Pursuant to Florida law, "'[c]ourts should not grant a motion for judgment of acquittal unless the evidence is such that no view which the jury may lawfully take of it favorable to the opposite party can be sustained under the law.'" *Woods v. State*, 733 So. 2d 980, 985 (Fla. 1999) (quoting *Lynch v. State*, 293 So. 2d 44, 45 (Fla. 1974)).  The evidence presented in this case included Hall's testimony that she saw Petitioner shoot the victim in the head while he was lying on the ground; Petitioner's admissions that he was at the scene of the offense, shot a firearm, and threw out the firearm after leaving the scene;

testimony that a .380 firearm was recovered on the route taken by Petitioner approximately half a mile from the location he provided police; and testimony that shell casings found at the scene were fired from the .380 firearm. Although evidence was presented contradicting some of this evidence, such contradictions were for the trier of fact to weigh, and sufficient evidence existed for the jury to find Petitioner guilty of second degree murder. Consequently, Petitioner has not demonstrated a reasonable probability exists that a judgment of acquittal would have been granted. Accordingly, claim ten is denied pursuant to Section 2254(d).

Any of Petitioner's allegations not specifically addressed herein have been found to be without merit.

## IV. *Certificate of Appealability*

This Court should grant an application for certificate of appealability only if the Petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make such a showing "the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *see also Lamarca v. Sec'y Dep't of Corr.*, 568 F.3d 929, 934 (11th Cir. 2009). When a district court dismisses a federal habeas petition on procedural grounds without reaching the underlying constitutional claim, a certificate of appealability should issue only when a petitioner shows "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was

correct in its procedural ruling." *Id.*; *Lamarca*, 568 F.3d at 934.   However, a prisoner need not show that the appeal will succeed.  *Miller-El v. Cockrell*, 537 U.S. 322, 337 (2003).

Petitioner has not demonstrated that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.  Moreover, Petitioner cannot show that jurists of reason would find this Court's procedural rulings debatable. Petitioner has failed to make a substantial showing of the denial of a constitutional right. Thus, the Court will deny Petitioner a certificate of appealability.

For the foregoing reasons, it is **ORDERED AND ADJUDGED** as follows:

1.      The Second Amended Petition for Writ of Habeas Corpus (Doc. No. 16) filed by Dwayne Wilson is **DENIED**, and this case is **DISMISSED WITH PREJUDICE**.

2.      Petitioner is **DENIED** a Certificate of Appealability.

3.      The Clerk of the Court is directed to enter judgment accordingly and close this case.

**DONE AND ORDERED** in Orlando, Florida, this 12th day of April, 2013.

Charlene Edwards Honeywell
United States District Judge

Copies to:
OrlP-1 4/12
Counsel of Record
Dwayne Wilson